IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

U.S. DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

MAY 30 2025

FILED

| | | |
|---|---|---|
| ACCESS PRO MEDICAL, LLC, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CV 125-063 |
| | * | |
| JORDAN HARTMAN, | * | |
| | * | |
| Defendant. | * | |
| | * | |

O R D E R

Before the Court is Plaintiff's motion for temporary restraining order and preliminary injunctive relief. (Doc. 7.) For the following reasons, Plaintiff's motion is **GRANTED**.

## I. BACKGROUND

This action arises out of Defendant's alleged breach of a non-solicitation agreement into which he entered during his prior employment with Plaintiff. (Doc. 6, at 1-2.) Plaintiff, a Georgia limited liability corporation headquartered in Augusta, Georgia, employed Defendant as a Senior Territory Manager from August 1, 2023, until October 9, 2024. (Id. at 3-4; Doc. 6-3, at 2.) As Senior Territory Manager, Defendant sold Plaintiff's medical products to its current and prospective customers within Colorado. (Doc. 6, at 3.) Defendant was then and continues to be a resident of Colorado. (Id. at 2-3.)

Plaintiff sent Defendant a formal offer of employment (the "Offer Letter") on July 26, 2023, which detailed job responsibilities and compensation information for the Senior Territory Manager position. (Doc. 6-3.) The Offer Letter did not mention any restrictive covenant related to the position. (Id.) Defendant signed the Offer Letter on July 28, 2023, thereby accepting the position. (Id. at 3.)

On August 1, 2023, Defendant's first day of work, Plaintiff sent him a document titled "Employee Covenant Agreement" (the "Agreement") and asked him to sign and return it that day, which he did. (Doc. 6-1; Doc. 19-1, at 3.) Most relevant to the instant motion are three provisions in the Agreement: a non-solicitation clause, a forum selection clause, and a choice of law clause. (Doc. 6-1, at 4-5.) Section 5 of the Agreement, titled "No Solicitation," provides:

> For a period of one (1) year after termination of Employee's employment with the Company, for any reason and whether voluntary or involuntary, Employee will not: (a) induce or attempt to influence directly or indirectly any employee of the Company to terminate his or her employment with the Company or to work for or with Employee or any other person or entity, or (b) solicit or assist any person or entity in soliciting current customers or known prospective customers (i.e. an entity with whom the Company, or the Employee on behalf of the Company, had meaningful business contact during the one (1) year prior to termination of Employee's employment) of the Company.

(Id.) Subsection 8.3 of the Agreement, titled "Governing Law," provides:

> This Agreement shall be governed by and construed according to the laws of the State of GEORGIA without giving effect to choice or conflict of law provisions. The Parties hereby agree that any action arising out of this Agreement will be brought solely in the Superior Court of Richmond County, Georgia or the U.S. District Court for the Southern District of Georgia, Augusta Division. Both Parties hereby submit to the exclusive jurisdiction and venue of any such court.

(Id. at 5.) Defendant signed the Agreement and initialed each page before returning it to Plaintiff. (Id. at 2-7.)

Defendant's employment with Plaintiff ended on October 9, 2024, and he accepted a Territory Director position with one of Plaintiff's competitors, Acera Surgical, Inc. ("Acera"), sometime that month. (Doc. 6, at 4.) Defendant works for Acera in Colorado, and Plaintiff alleges he has breached the Agreement's non-solicitation provision by selling Acera products, which compete with Plaintiff's, to Plaintiff's existing and prospective customers. (Id. at 5.) Specifically, Plaintiff alleges that since Defendant began working for Acera, he has been observed at HCA HealthONE Swedish Hospital ("Swedish Hospital"), his largest account while working for Plaintiff. (Id. at 5-6.) Plaintiff also alleges Defendant is attempting to sell Acera products to Children's Hospital Colorado ("CHC"), a customer of Plaintiff's to whom Defendant previously sold Plaintiff's products. (Id. at 6.)

Plaintiff sent Defendant a cease-and-desist letter upon learning of the alleged breach, but Defendant failed to comply. (Id.) Plaintiff then filed this action on March 21, 2025,

3

asserting a breach of contract claim against Defendant and seeking declaratory judgment, injunctive relief, damages, and costs and fees. (Doc. 1.) On April 4, 2025, Defendant filed a lawsuit against Plaintiff in Colorado state court (the "Colorado Litigation"), requesting *inter alia* that the court hold the Agreement void and unenforceable under Colorado law. (Doc. 6-5, at 4, 10-11.) Plaintiff then filed an amended complaint (the "Complaint") on April 25, 2025. (Doc. 6.) In addition to incorporating all allegations contained in the initial complaint, the Complaint alleges Defendant's initiation of the Colorado Litigation violated the Agreement's forum selection clause, thereby resulting in a second breach. (Id. at 6-7.)

Plaintiff also filed the instant motion for temporary restraining order and preliminary injunction on April 25, 2025. (Doc. 7.) Plaintiff asks the Court to (1) declare the forum selection clause valid and enforceable; (2) declare the choice of law clause valid and enforceable; (3) enjoin Defendant from "directly or indirectly soliciting, or attempting to solicit, any current or prospective customer of [Plaintiff] for purposes of providing products or services that are competitive with those provided by [Plaintiff]"; and (4) enjoin Defendant from proceeding in the Colorado Litigation. (Id. at 20.) Defendant responded in opposition (Doc. 19), Plaintiff replied in support (Doc. 22), and both Parties attended a hearing on the motion before the Court on

4

May 16, 2025. The Court took the matter under advisement following the hearing and now issues its decision herein.

## II. LEGAL STANDARD

Plaintiff moves the Court for a temporary restraining order and preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a). (Doc. 7, at 7.) Granting a temporary restraining order or preliminary injunction is only proper when the moving party shows: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir. 2005) (per curiam) (citation omitted). In the Eleventh Circuit, "a preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishe[s] the 'burden of persuasion' as to the four requisites." McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998) (citation and internal quotation marks omitted). The decision to grant or deny a temporary restraining order or preliminary injunction is within the district court's discretion. Schiavo, 403 F.3d at 1226; Carillon Imps., Ltd. v. Frank Pesce Int'l Grp. Ltd., 112 F.3d 1125, 1126 (11th Cir. 1997) (per curiam).

### III. DISCUSSION

The Court addresses the Parties' arguments as to each of the four elements required for a preliminary injunction in turn.

### A. Likelihood of Success on the Merits

Plaintiff asserts it is likely to succeed on the merits of its claims for declaratory judgment and breach of contract because both Parties agreed to the Agreement's forum selection, choice of law, and non-solicitation provisions, all of which Defendant breached. (Doc. 7, at 8.) Defendant counters with four arguments: first, that the Agreement is void because it violates Colorado law; second, that the Agreement is unenforceable because Defendant's assent was procured through fraud or overreaching; third, that Plaintiff has not shown Defendant has actually breached the Agreement; and fourth, that Plaintiff is not entitled to the injunctive relief it seeks. (Doc. 19, at 6-10, 15-19.)

#### 1. Whether Colorado Law Voids the Agreement

The threshold question as to whether Plaintiff is likely to succeed on the merits is, as Defendant suggests, whether the Agreement constitutes a valid contract. Defendant contends the Agreement was void from the outset because it failed to comply with Colorado law. (Id. at 6-8.) In Colorado, otherwise valid covenants not to compete are void absent strict compliance with statutory notice requirements, and such covenants must be governed

6

by Colorado law and their enforceability adjudicated in Colorado, regardless of contractual stipulations to the contrary. Colo. Rev. Stat. § 8-2-113. Defendant asserts, and Plaintiff does not contest, that the Agreement failed to comply with Colorado's notice requirements. (Doc. 19, at 7-8.) Defendant also asserts Georgia courts, which rely on the *lex loci contractus* principle to determine choice of law in the absence of a contractual choice of law provision, would find the Agreement void because it violates the laws of Colorado, the same state where the Agreement was executed and performed. (Id. at 8-10.) Plaintiff opposes Defendant's position, pointing to numerous cases in Georgia and elsewhere that have upheld choice of law and forum selection provisions that would be void under the laws of another state. (Doc. 22, at 2-3.)

The Court finds the Agreement's failure to comply with Colorado law does not render it void. Federal courts sitting in diversity "must apply the choice of law rules of the forum state to determine which substantive law governs the action." U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp., 550 F.3d 1031, 1033 (11th Cir. 2008) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). Though Defendant argues the choice of law provision itself is void because it violates Colorado law, meaning that Georgia would have to invoke *lex loci contractus* to determine which state's laws to apply, Defendant does not explain why the

Court should use Colorado law as the starting point rather than the law of the forum state of Georgia. Because this case is pending in a federal district court in Georgia, the Court applies Georgia's choice of law rules. See Westrock Servs., LLC v. Roberts, No. 1:22-CV-01501, 2022 WL 1715964, at *3-4 (N.D. Ga. May 4, 2022) (enforcing Georgia forum selection and choice of law clauses despite California statute rendering such provisions void); NetRoadshow, Inc. v. Carrandi, No. 1:23-CV-05697, 2024 WL 5005431, at *3-5 (N.D. Ga. Sept. 10, 2024) (enforcing Georgia choice of provision despite possibility that California statute rendered underlying contract void).

In Georgia, choice of law provisions are upheld "unless application of the chosen law would be contrary to the public policy or prejudicial to the interests of [Georgia]." CS-Lakeview at Gwinnett, Inc. v. Simon Prop. Grp., Inc., 659 S.E.2d 359, 361 (Ga. 2008) (citation omitted). Defendant does not offer any reason why the choice of law provision in the Agreement runs counter to Georgia's public policy or interests. Moreover, apart from asserting that Georgia will not enforce a contract that is void under another state's statutes, Defendant does not offer any reason why the Agreement is void under Georgia law. (Doc. 19, at 9.) In Georgia, "a valid contract requires a subject matter, a consideration, and mutual assent by all parties to all terms." Dibrell Bros. Int'l S.A. v. Banca Nazionale Del Lavoro, 38 F.3d

8

1571, 1582 (11th Cir. 1994) (citations and internal quotation marks omitted). Defendant does not argue any of these three elements are not present here, nor does he argue the Agreement is void for illegality under the laws of Georgia. Therefore, because the Agreement's choice of law provision identifies Georgia as the controlling law, and because Defendant does not establish Georgia law renders it void, the Court finds the Agreement is valid.

    2. <u>Whether the Forum Selection Clause is Enforceable</u>

    Next, Defendant argues Plaintiff cannot establish a substantial likelihood of success on the merits because the forum selection clause is the product of fraud or overreaching. (Doc. 19, at 15.)

    Both Georgia courts and federal courts sitting in diversity use the test articulated in <u>M/S Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1 (1972), to determine the enforceability of a forum selection clause. <u>See</u> <u>Davis v. Oasis Legal Fin. Operating Co., LLC</u>, 936 F.3d 1174, 1178 (11th Cir. 2019); <u>SR Bus. Servs., Inc. v. Bryant</u>, 600 S.E.2d 610, 612 (Ga. Ct. App. 2004). Under <u>Bremen</u>, a forum selection clause is "*prima facie* valid and should be enforced unless the opposing party shows that enforcement would be unreasonable under the circumstances." <u>SR Bus. Servs.</u>, 600 S.E.2d at 612. Such clause is unenforceable only when "(1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or

unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy." Rucker v. Oasis Legal Fin., L.L.C., 632 F.3d 1231, 1236 (11th Cir. 2011) (citation omitted). For non-negotiated forum selection clauses, the Eleventh Circuit applies the "reasonable communicativeness" test to evaluate whether the agreement was induced by fraud or overreaching. Liles v. Ginn-La W. End, Ltd., 631 F.3d 1242, 1246 (11th Cir. 2011) (citation omitted). Under this test, courts look at "the clause's physical characteristics and whether the plaintiffs had the ability to become meaningfully informed of the clause and to reject its terms." Krenkel v. Kerzner Int'l Hotels Ltd., 579 F.3d 1279, 1281 (11th Cir. 2009).

Invoking the reasonable communicativeness test, Defendant argues the following facts establish overreach:

- The Agreement was a five-page, single-spaced document;

- The forum selection clause, which had the heading "Governing Law," was one of ten subparagraphs of paragraph 8, which was titled "General";

- The Offer Letter that Defendant signed on July 26, 2023, contained no restrictive covenants and did not condition Plaintiff's offer of employment on any such covenant;

- Plaintiff did not present the Agreement to Defendant until his first day of work;

- Plaintiff instructed Defendant to sign the Agreement that same day;

- Defendant had no opportunity to negotiate any provision of the Agreement or to consult with a lawyer before signing;

10

- Plaintiff did not provide Defendant with a separate written notice stating he was signing a restrictive covenant.

(Doc. 19, at 16.) Defendant cites two cases from Illinois for the proposition that these facts amount to overreach. (Id. (citing Am. Food Mgmt., Inc. v. Henson, 434 N.E.2d 59, 63 (Ill. App. Ct. 1982) and Telxon Corp. v. Hoffman, 720 F. Supp. 657, 662 (N.D. Ill. 1989)).) In response, Plaintiff argues the forum selection clause passes the reasonable communicativeness test because it contained clear language and because Defendant signed every page of the Agreement, including the page on which an "Advice of Counsel" provision appeared. (Doc. 22, at 8.)

The Court agrees with Plaintiff that the forum selection clause passes the reasonable communicativeness test and that Defendant has not established he agreed to the clause because of fraud or overreach. To satisfy the physical characteristics prong of the reasonable communicativeness test, "it is enough that the forum selection clause was clearly set out and contained clear language." Lebedinsky v. MSC Cruises, S.A., 789 F. App'x 196, 200 (11th Cir. 2019) (finding physical characteristics prong satisfied when forum selection language was under "clear headings" and in identical typeface as the other portions of the document). Here, the forum selection clause is in identical typeface as the rest of the Agreement, underneath the underlined "Governing Law"

11

subheading. (Doc. 6-1, at 5.) The contents of the Agreement are broken into visually distinct paragraphs, and the language of the forum selection clause itself is clear and straightforward. (Id.) Therefore, the Court finds the forum selection clause was clearly set out and contains clear language, thereby satisfying the first prong.

The second prong of the reasonable communicativeness test requires examining whether the party asserting fraud or overreach had sufficient "time and opportunity to become meaningfully informed of the forum selection clause." Lebedinsky, 789 F. App'x at 200 (citations omitted); see also Liles, 631 F.3d at 1247 (finding second prong satisfied when forum selection clause contained all-caps provisions advising the signer to review the contract conditions carefully and consult an attorney prior to signing). Here, the Agreement contained a provision subtitled "Advice of Counsel," which reads:

> The Employee recognizes that this Agreement is an important document that affects Employee's legal rights. For this reason, Employee may wish to seek independent legal advice before accepting the terms stated herein. The Employee acknowledges that Employee has read and understands the provisions contained herein . . . .

(Doc. 6-1, at 6.) Furthermore, Defendant does not argue that he requested and was denied time to seek legal advice before returning the signed Agreement; rather, he initialed every page, thereby

indicating he reviewed and was aware of the full Agreement's terms. (<u>See</u> <u>id.</u> at 2-7.)

Defendant points to Plaintiff's instruction to return the signed Agreement to Plaintiff immediately as evidence that he did not have time or opportunity to become meaningfully informed of the forum selection clause. (Doc. 19, at 16.) However, the Court finds his written acknowledgment of both that clause and the Advice of Counsel provision, coupled with no evidence he sought and was denied an opportunity to obtain legal advice, is sufficient to conclude Defendant received a meaningful opportunity to inform himself of the forum selection clause to which he agreed. For these reasons, the Court finds Defendant has not established the forum selection clause is unenforceable because of fraud or overreach.

3. <u>Whether Plaintiff has Shown Defendant Breached the</u>
   <u>Agreement</u>

Plaintiff alleges Defendant (1) has "been observed at [Swedish Hospital]" and (2) "is soliciting" and "attempting to sell to [CHC]." (Doc. 7, at 16.) Defendant argues these allegations do not establish he actually breached the Agreement because they do not show he took affirmative action to make contact with Plaintiff's customers, which is required for solicitation. (Doc. 19, at 17.)

The Court finds Plaintiff has pled facts sufficient to allege Defendant breached the Agreement. That Defendant (1) has been seen visiting one of Plaintiff's customers, (2) contends the Agreement is invalid, (3) submitted a declaration (Doc. 19-1) in which he did not deny breaching the Agreement, and (4) initiated the Colorado Litigation in an attempt to obtain a judgment deeming the Agreement void all amount to circumstantial evidence pointing toward breach. See Westrock Servs., 2022 WL 1715964 at *6 (finding circumstantial evidence of breach sufficient to grant preliminary injunction). While discovery will elucidate the exact nature of Defendant's communications with Plaintiff's customer(s) in his position with Acera, the Court is satisfied that Plaintiff has pled facts showing a likelihood of success on the merits as to the issue of breach.

### 4. Whether Plaintiff is Entitled to the Injunctive Relief Sought

Next, Defendant argues Plaintiff is unlikely to succeed on the merits because it is not entitled to the injunctive relief sought. (Doc. 19, at 19.) Specifically, Defendant argues the injunction Plaintiff requests is broader than the Agreement and Georgia law allow. (Id.) Plaintiff responds by noting that, under Georgia's Restrictive Covenant Act, "'any reference to a prohibition against "soliciting or attempting to solicit business from customers" or similar language shall be' enforceable and

14

construed narrowly to comply with Georgia law." (Doc. 22, at 11 (quoting O.C.G.A. § 13-8-53(b)).) Therefore, Plaintiff argues, the Court is required to enforce the Agreement "once it is narrowly construed to enjoin [Defendant] from soliciting [Plaintiff]'s current and prospective customers with whom he had 'material contact' while employed by [Plaintiff] as set forth in O.C.G.A. § 13-8-53(b)." (Id. at 12.)

The Court finds that while the injunctive relief Plaintiff requests is broader than Georgia law permits, such overbreadth is not fatal to the likelihood of Plaintiff's success on the merits because Georgia law requires the Court to narrowly construe and uphold an otherwise overbroad non-solicitation provision. See O.C.G.A. § 13-8-53(b). Under Georgia law,

> [A]n employee may agree in writing for the benefit of an employer to refrain . . . from soliciting . . . any business from any of such employer's customers . . . with whom the employee had material contact during his or her employment for purposes of providing products or services that are competitive with those provided by the employer's business. . . . Any reference to a prohibition against "soliciting or attempting to solicit business from customers" or similar language **shall be adequate for such purpose and narrowly construed to apply only to: (1) . . . the employer's customers . . . with whom the employee had material contact; and (2) products or services that are competitive with those provided by the employer's business.**

Id. (emphasis added). The Agreement and the permanent injunctive relief sought are both broader than Georgia law permits in that they are not limited to customers with whom Defendant had material

contact or to products that compete with those sold by Plaintiff. (Doc. 6-1, at 4-5; Doc. 6, at 11.)    Furthermore, the preliminary injunctive relief Plaintiff seeks is also overbroad because it does not contain the "material contact" limitation.    (Doc. 7, at 20.)    Finally, both the permanent and preliminary injunctive relief sought are broader than the Agreement because they do not limit the customers Defendant is prohibited from soliciting to those with whom he had material contact during the year prior to his termination.    (See Doc. 6-1, at 4-5.)    However, given O.C.G.A. § 13-8-53(b)'s mandate that the Court construe the Agreement to comply with the governing statute, the Court does not find the issue of overbreadth renders Plaintiff unlikely to succeed on the merits of its case.

## B. Irreparable Harm

The Court now turns to the Parties' arguments regarding the possibility of irreparable harm to Plaintiff should the Court decline to grant the preliminary injunction.

Plaintiff asserts it will suffer irreparable harm because the Agreement itself states a breach would cause irreparable harm and Defendant agreed, by signing the Agreement, that Plaintiff would be entitled to an injunction in the event of a breach.    (Doc. 7, at 16.)    Plaintiff also asserts Defendant's solicitation of its current and future clients will cause injury that cannot be remedied by money.    (Id.)    Finally, Plaintiff asserts the only

16

available relief from the Colorado Litigation is an injunction requiring Defendant to dismiss that action. (Id. at 17.)

Defendant argues Plaintiff cannot argue irreparable harm because it waited months to seek a preliminary injunction after it learned of Defendant's employment with Acera. (Doc. 19, at 13.) Plaintiff counters this argument by asserting that knowledge of Defendant's employment with Acera is not equivalent to knowledge of Defendant's breach of the Agreement. (Doc. 22, at 14.) Defendant also reiterates that Plaintiff has presented no evidence that Defendant is soliciting Plaintiff's customers and asserts any harm suffered by Plaintiff could be remedied by money damages. (Doc. 19, at 13-14.)

The Court finds Plaintiff has established the existence of a risk of irreparable harm should it decline to grant the preliminary injunction. In signing the Agreement, Defendant acknowledged that Plaintiff "would be irreparably damaged by any . . . breach of th[e] Agreement" and therefore "shall be entitled to . . . equitable relief, including an injunction" in the event of Defendant's breach. (Doc. 6-1, at 5-6); see E.A. Renfroe & Co., Inc. v. Moran, 249 F. App'x 88, 93 (11th Cir. 2007) (upholding finding of threat of irreparable injury and noting defendants had "expressly acknowledged in writing the virtual impossibility of quantifying the damages that would be caused by a breach of confidentiality, and expressly authorized the remedy of a

preliminary injunction as appropriate"). Furthermore, loss of "customer goodwill and business is irreparable because it is neither easily calculable, nor easily compensable and is, therefore, an appropriate basis for injunctive relief." Variable Annuity Life Ins. Co. v. Joiner, 454 F. Supp. 2d 1297, 1304 (S.D. Ga. 2006) (citing Ferrero v. Associated Materials Inc., 923 F.2d 1441, 1449 (11th Cir. 1991)). Because Plaintiff risks loss of business and customer goodwill through Defendant's breach of the non-solicitation clause, and because Defendant previously acknowledged his breach of the Agreement would cause irreparable harm, the Court is satisfied that Plaintiff suffers a sufficient threat of irreparable harm to justify preliminary injunctive relief.

## C. Balance of Harms

Plaintiff argues the risk of harm it would suffer without an injunction outweighs the harm such injunction would impose upon Defendant because the relief sought would "merely prohibit him from engaging in activity which he is contractually prohibited from doing in the first place." (Doc. 7, at 18.) Defendant argues an injunction would "take away [his] livelihood" and therefore impose great harm. (Doc. 19, at 20.)

The Court finds the balance of harms weighs in Plaintiff's favor. At the May 16, 2025 hearing, Defendant strongly denied being in breach of the non-solicitation provision at all. If

Defendant is correct and his conduct has comported with the terms of the non-solicitation provision, then the Court's enforcement of that provision should not have any impact upon him, and he may carry on with his non-breaching activities. On the other hand, if Plaintiff is correct that Defendant has already breached the provision, the Court's preliminary injunction will protect Plaintiff while neither imposing new legal obligations upon Defendant nor preventing him from working for Acera in a capacity that does not breach the non-solicitation provision. The Court therefore finds the risk of harm to Plaintiff should the Court not enforce the Agreement at this point outweighs the harm Defendant may incur by such enforcement.

## D. Public Interest

Plaintiff argues an injunction will serve the public interest by preserving faith in valid contractual agreements between businesses and their employees. (Doc. 7, at 19.) Defendant argues the public interest will not be served by an injunction that prevents Defendant from pursuing his profession in Colorado. (Doc. 19, at 20.) Defendant also argues enjoining him from proceeding in the Colorado Litigation is against the public interest because Colorado law controls, and even if it does not, the public interest is not served by requiring key nonparty witnesses to travel to Georgia. (Id. at 20-21.)

First, the Court has already addressed the question of whether Colorado law controls and found that it does not. Furthermore, Defendant's argument about the availability of nonparty witnesses is better suited for the Court's consideration of his pending motion to dismiss or transfer, in which he raises a *forum non conveniens* argument. (See Doc. 4; Doc. 18.) The Court will therefore consider that argument more fully when it decides Defendant's pending motion.

The Court agrees with Plaintiff that Georgia has a public interest in upholding contractual obligations that protect legitimate business interests. See Glob. Payments Inc. v. Green, 484 F. Supp. 3d 1372, 1384 (M.D. Ga. 2020) (quoting Palmer & Cay of Georgia, Inc. v. Lockton Co., Inc., 629 S.E.2d 800, 804 (Ga. 2006) ("[E]mployers are 'entitled to protect themselves from the risk that a former employee might appropriate customers by taking unfair advantage of the contacts developed while working for the employer' by entering into restrictive covenants."). Furthermore, the Court is not persuaded by Defendant's argument that issuance of the preliminary injunction implicates a public interest because it will prevent him from pursuing his career in Colorado. As already stated, the preliminary injunction will hold Defendant to the terms of the Agreement, but it will not prevent him from engaging in work that does not violate the Agreement. For these

20

reasons, the Court finds issuing a preliminary injunction would serve the public interest.

## IV. CONCLUSION

Because Plaintiff has established a substantial likelihood of success on the merits, a risk of irreparable harm absent a preliminary injunction that outweighs potential harm to Defendant, and that the public interest will be served through issuance of the preliminary injunction, the Court **GRANTS** Plaintiff's motion for preliminary injunctive relief (Doc. 7). The Court further finds the Agreement's choice of law, forum selection, and non-solicitation provisions are valid and enforceable. Accordingly, **IT IS HEREBY ORDERED** that:

1. In accordance with the Agreement's non-solicitation provision and O.C.G.A. § 13-8-53(b), Defendant is **ENJOINED** from soliciting or assisting any person or entity in soliciting - for the purpose of providing products or services competitive with those provided by Plaintiff - any of Plaintiff's current or actively sought prospective customers with whom Defendant had material contact from October 9, 2023, until October 9, 2024.

2. In accordance with the Agreement's choice of law and forum selection provisions, Defendant is **ENJOINED** from further proceeding in the Colorado Litigation.

3. No bond is required per paragraph 8.5 of the Agreement.

4. This preliminary injunction will expire on October 9, 2025, or upon issuance of a final order by the Court should such order issue before that date.

**ORDER ENTERED** at Augusta, Georgia, this 30th day of May, 2025.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

22